No. 90-192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

JOHN H. ALLEN,
        Claimant and Respondent,
    -v-
TREASURE STATE PLUMBING,
        Employer,
    and
EMPLOYERS COMMERCIAL UNION,
        Insurer-Defendant and Appellant,
    -v-
CHARTER OAK FIRE INSURANCE COMPANY,
        Insurer-Defendant and Respondent.

FILED

DEC 19 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court

               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                C. J. Seifert; Gough, Shanahan, Johnson & Waterman;
                Helena, Montana

        For Respondent:

                Donald D. Sommerfeld; Towe, Ball, Enright & Mackey;
                Billings, Montana
                Terry G. Spear; Matovich, Addy & Keller; Billings,
                Montana

                            Submitted on Briefs:   October 11, 1990

                                      Decided:   December 19, 1990

Filed:

                            Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Employers' Commercial Union appeals from the judgment of the Workers' Compensation Court which held that Employers' Commercial Union must pay permanent partial disability benefits and attorney's fees to claimant, John Allen. We affirm.

The issues we find necessary for review are:

1. Whether the Workers' Compensation Court properly allocated John Allen's benefit payments among insurers;

2. Whether the Workers' Compensation Court properly awarded John Allen attorney's fees.

At time of trial, John Allen (Mr. Allen) was a 48 year old married man who worked for his father as a laborer at Treasure State Plumbing and Heating since the age of 14. Since that time, Mr. Allen has worked as a plumber, laborer and as a backhoe operator.

In July of 1973, he began to experience low back pain. In an effort to alleviate the pain, Mr. Allen sought treatment from Dr. Sterling R. Hayward, a Billings orthopedic surgeon. According to Dr. Hayward, Mr. Allen's back condition had existed for at least five years and was aggravated by his work as a backhoe operator. As a result of this diagnosis, Dr. Hayward recommended that Mr. Allen change jobs and discontinue his work as a backhoe operator.

Apparently, Mr. Allen did not heed this advice and on October 25, 1974 he suffered a second back injury while operating a backhoe. Following this injury, he did not return to work until March 12, 1976. Mr. Allen sought workers' compensation benefits

2

and Employers Commercial Union accepted liability and paid medical benefits as well as temporary total and partial disability benefits.

Following this accident, Mr. Allen again sought treatment from Dr. Hayward. Following several examinations, the doctor determined that Mr. Allen's back condition may have been the result of a herniated nucleus pulposus. This unconfirmed, yet suspected diagnosis, matched his conclusions of a year earlier, when Mr. Allen first sought treatment. Once again, Dr. Hayward recommended that Mr. Allen seek different employment.

In May of 1976, the doctor again examined Mr. Allen and noted that his back condition was "staying about the same." Following this examination, Dr. Hayward rendered his opinion that Mr. Allen had reached a condition of maximum medical improvement.

After returning to work, Mr. Allen decreased his amount of time operating the backhoe. In fact, the only time he did any backhoe work was when there was no light work available. He noticed that even a small amount of time on the backhoe aggravated his back injury.

On September 12, 1977, Mr. Allen, while working for Treasure State Plumbing, again injured his back. Apparently, this injury occurred while he as helping a co-worker lift a ten inch clay sewer pipe, which weighed approximately 230 pounds. The insurer at risk at the time of this accident was Charter Oak Fire Insurance Company (Charter Oak), however Mr. Allen did not pursue any claim against it at this time.

Fearing that Dr. Hayward would recommend he undergo surgery, Mr. Allen decided to seek chiropractic care. Therefore, instead of returning to Dr. Hayward, he sought treatment from Dr. Cromwell, a Billings chiropractor. While in Dr. Cromwell's care, he returned to work where he reinjured his back while lifting some bathtubs. Once again, Mr. Allen did not report this accident, nor did he file a claim.

Following these accidents, Mr. Allen discontinued working in the field and began working in the office. Finally, in 1987, he filed a petition before the Workers' Compensation Court alleging that he had suffered an injury on October 24, 1974 and further that he was entitled to 500 weeks of permanent partial disability payments, attorney's fees, costs and penalties. This petition was filed against his employer, Treasure State Plumbing and Heating and the appellant Employers Commercial Union Insurance Company (ECU).

Discovery conducted after this petition was filed, revealed job related injuries occurring in 1977. It further revealed Dr. Hayward's opinion that Mr. Allen's back injury reached maximum medical improvement in May of 1976. Based upon these facts ECU determined that it was not the insurer on risk at the time of the 1977 injuries. It therefore entered into a partial settlement with Mr. Allen and joined with him in an amended petition before the Workers' Compensation Court. In this amended petition, ECU sought a judgment holding Charter Oaks liable for all permanent partial disability payments occurring after September 12, 1977, the date of Mr. Allen's subsequent injury. It based its arguments on the

4

fact that Charter Oaks was the insurer on risk at the time of this injury and that Mr. Allen had reached maximum healing in 1976--before the 1977 accident.

Following trial, the Workers' Compensation Court held that Charter Oaks was responsible for all compensation benefits reasonable related to the temporary aggravation of Mr. Allen's back condition resulting from his accident of 1977. However, it further found that the 1974 injury was the cause of Mr. Allen's present permanent partial disability and related diminution in earning capacity. It therefore held that ECU was liable for the full extent of Mr Allen's permanent partial disability payments. It further held that ECU was liable for costs and attorney's fees.

ECU filed a notice of appeal and eventually, following an order of this Court, Mr. Allen was dismissed as a party. Therefore, the only issues submitted for our review concern the disputed liability between ECU and Charter Oaks and the resultant attorney's fees.

Initially, we note the standard of review applicable to appeals from the Workers' Compensation Court. When reviewing questions of fact, we limit our examination of the record to determine if substantial credible evidence exists to support the lower court's findings. O'Brien v. Central Feeds (1990), 241 Mont. 267, 786 P.2d 1169. In reviewing questions of law, we merely determine whether the lower court's interpretation of the law is correct. Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 770 P.2d 522.

The lower court extensively reviewed all of the evidence surrounding Mr. Allen's back injuries. It noted that he began having problems with his back at least as early as 1972, when he first sought medical treatment. At that time, the examining physician advised him to discontinue backhoe work. Apparently, this condition progressed and Mr. Allen suffered additional compensable injuries in 1974 and 1977.

Following the 1974 injury, Dr. Hayward noted that Mr. Allen had reached a condition of maximum medical improvement. Particularly, in May of 1976 he noted that Mr. Allen's back condition was "staying about the same."

In 1975, Dr. Hayward conducted a physical examination of Mr. Allen. During this examination, Dr. Hayward made numerous findings concerning Mr. Allens' flexibility, extension and sensations of pain. The doctor did not, however, attempt to extrapolate any impairment rating from these findings.

Approximately ten years later, at the request of Mr. Allen's counsel, Dr. Hayward performed another physical examination. The doctor was asked to determine an impairment rating. Consequently, this examination was much more detailed than that given in 1976. Following the examination, Dr. Hayward determined that Mr. Allen's condition was probably worse in 1986 than in 1976. However, he in no way attributed the worsening of Mr. Allen's condition to any injury suffered in 1977. To the contrary, the doctor testified that ongoing deterioration was natural for a person with Mr. Allen's condition.

Finally, the Workers' Compensation Court heard testimony from Mr. Allen, his father and employer, and Mr. Allen's co-workers, that indicated that Mr. Allen's back condition significantly worsened after the 1977 injury. According to this testimony, Mr. Allen's ability to perform on the worksite was greatly impaired following these accidents. However, the lower court also took into consideration testimony which indicated that Mr. Allen had problems doing heavy labor and running a backhoe prior to the 1977 incidents, as well as Dr. Hayward's testimony indicating that these incidents did not cause further deterioration to his back. Based upon this testimony, the court determined that although the injuries may have temporarily aggravated Mr. Allen's pre-existing condition, they did not cause his permanent partial disability.

The evidence, when viewed as a whole supports the Workers' Compensation Court's conclusion that Mr. Allen's 1974 injury was the cause of his current disability. This Court will not reverse the Workers' Compensation Court unless its findings of fact are clearly erroneous. See Tenderhold v. Travel Lodge Itnl. (1985), 218 Mont. 523, 709 P.2d 1011.

Furthermore, we find no error of law warranting reversal. ECU maintains that our decision in Belton v. Hartford Accident and Indemnity Co. (1983), 202 Mont. 384, 658 P.2d 405, controls the outcome of this case. In Belton, we held that once a claimant has reached maximum healing or a medically stable condition, the insurer at risk is no longer responsible for any subsequent injuries or conditions. Using this rule of law, ECU argues that

7

because Mr. Allen had attained a condition of maximum healing in 1976, it should not be liable for the permanent partial benefits claimed in 1987.

We disagree with ECU's application of Belton to the facts in this case. In Belton, it was undisputed that an injury suffered by the claimant in 1979 aggravated a prior injury sustained in 1977. Belton, 202 Mont. at 386. The 1979 injury rendered the claimant permanently, totally disabled. In the case now before us, however, Mr. Allen's doctor testified that his back condition was not permanently aggravated by his second injury. Rather, as stated by the Workers' Compensation Court, this second injury only temporarily aggravated his pre-existing injury.

In harmony with Belton, the Workers' Compensation Court required Charter Oak to pay temporary benefits for the temporary aggravation to Mr. Allen' back caused by the 1977 injury. However, because it found that his permanent partial disability was caused by the 1974 injury, the court correctly held that ECU was responsible for payment of those benefits. We hold this was a correct interpretation and application of Belton and accordingly the Workers' Compensation Court is affirmed on this issue.

Finally, ECU argues that the lower court erred in awarding Mr. Allen attorney's fees. According to ECU, the statute in effect at the time of the 1974 injury determines the manner and extent of Mr. Allen's attorney's fees award. See Gullett v. Stanley Structures (1986), 222 Mont. 365, 722 P.2d 619. The statute in effect at the time of Mr. Allen's injury was § 92-616 RCM, which states:

8

**92-616. Costs and attorneys' fees payable on denial of claim later found compensable.** In the event the insurer denies the claim for compensation or terminates compensation benefits, and the claim is later adjudged compensable, by the division or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the division. However, under rules adopted by the division and in the discretion of the division, an insurer may suspend compensation payments for not more than thirty (30) days pending the receipt of medical information.

ECU maintains that it did not deny "the claim for compensation or terminate compensation benefits." Rather, it merely contested the extent of its obligation to Mr. Allen. Therefore, it maintains that § 92-616 RCM, does not provide any authority to support the lower court's award of attorney's fees and costs.

We disagree. ECU paid medical costs, and disability benefits up until September 12, 1977, the date of Mr. Allen's second injury. It refused, however, to pay any benefits due after that date. We hold that this refusal was tantamount to a "termination of compensation benefits." Therefore, the lower court's award of attorney's fees and costs is clearly justified under § 92-616 RCM.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

9

_William E. Hunt Sr._

_Diane G. Barz_

_John C. Sheehy_

Justices