No. 91-324

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

ST. JOHN'S LUTHERAN CHURCH,

Appellant,

-vs-

STATE COMPENSATION INSURANCE FUND,

Respondent

APPEAL FROM:   The Workers' Compensation Court,
               The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

               Alden Pedersen argued; Pedersen & Hardy, Billings,
               Montana

        For Respondent:

               Laurence A. Hubbard argued; Legal Counsel, State
               Compensation Mutual Ins. Fund, Helena, Montana

FILED

FEB - 6 1992

Filed: *Ed Smith*
       CLERK OF SUPREME COURT
       STATE OF MONTANA

Clerk

Submitted:  January 8, 1992

Decided:  February 6, 1992

Justice William E. Hunt, Sr., delivered the opinion of the Court.

This matter is before the Court on appeal from the Workers' Compensation Court which held that appellant's pastor was an employee of St. John's Lutheran Church for purposes of workers' compensation coverage. Appellant argues that the pastor is an independent contractor and not an employee. Appellant also argued unsuccessfully before the Workers' Compensation Court that the designation of the pastor as an employee violated the free exercise clause of both the United States and Montana Constitutions. We affirm.

We phrase the issues before this Court as follows:

1. Did the Workers' Compensation Court err in determining that the pastor is an employee of St. John's Lutheran Church for purposes of the Workers' Compensation Act, and not an independent contractor?

2. Did classifying the appellant's pastor as an employee, which is contrary to the appellant's sincerely held religious beliefs, violate the appellant's right of free exercise of religion guaranteed under the First Amendment to the United States Constitution and Article 11, § 5, of the Montana Constitution?

On appeal, both the appellant and the respondent stipulated to the following statement of facts as found by the hearing examiner:

> 1. St. Johns Lutheran Church is located in Laurel, Montana. The Church has a Pastor to carry out the full-time ministry functions essential to the congregation. The Pastor is selected by the congregation from a list of Pastors in good standing provided by the District

2

President of the Lutheran Church. No written contract exists concerning the relationship between St. Johns Lutheran Church and the Pastor. St. Johns Lutheran Church and the Pastors refer to the relationship as a "call to serve."

2. The Pastor is paid on a monthly basis for his services. In addition, the pastor receives . . . housing accommodations and health insurance. The congregation determines the pay amount and benefits. The Pastor is paid by check from the Treasurer appointed by the congregation.

3. The Church provides the Pastor with an office, place of worship, clerical vestments, hymnals and a support staff consisting of a full-time secretary, part-time bookkeeper, custodian and groundskeeper. The support staff are paid through the congregation Treasurer in the same manner as the Pastor.

4. The Pastor can leave his ministry duties at the Church for any reasons he believes are valid and sufficient. St. Johns Lutheran Church can terminate the Pastor upon the approval of the synodical body for various reasons such as adherence to false doctrine, scandalous life, and willful neglect or inability to perform his pastoral duties.

5. The Church must use an appeal process through an adjudication body in order to terminate the Pastor from his ministerial duties. If the Pastor chooses to leave his position at St. Johns Lutheran Church, he is not bound to the appeals process. Regardless of who is the moving party in the severing of the relationship, neither party can sue the other for liability reasons.

6. St. Johns Lutheran Church and the Pastors do not consider a "call to serve" as a contractual relationship but rather a theological matter. Under their contention, the call does not set up a relationship of employer to employee, but rather a relationship of Pastor to a congregation, as a shepherd. Therefore, the ministry is under the servanthood to God, not to the congregation.

In addition to the facts found by the hearing examiner, both parties accept the following background facts as determined by the Workers' Compensation Judge in his June 4, 1991, order on appeal:

The pastor may receive remuneration for work from third parties, even if time is taken away from his parish work. For the purposes of Social Security and when filing tax returns, the pastor is considered self-employed.

The church comes within the statutory definition of an employer and pays premiums for workers' compensation coverage for its support staff. Its insurer is the State Compensation Mutual Insurance Fund (State Fund).

In 1981, the church made application to the State Fund for workers' compensation coverage and indicated there were four employees--a minister, a bookkeeper, a janitor and a handyman to be included on the policy. The employer's application and policy was approved for coverage on May 28, 1981. In October 1984, a revised Insurance Policy was sent to all State Fund insureds and on October 19, 1985, a Policy Amendment was issued to the church. There is no evidence to show that the church did not pay premiums for workers' compensation coverage for its pastor during this period of time.

In 1986, Guy Robbins, employer representative for the then, Division of Workers' Compensation, conducted a routine audit of the account for the church as a result of an incorrect amount of money being reported by the church secretary on a quarterly report. As a result of the audit the Division was advised that it was the position of the church that it was not necessary to have workers' compensation coverage as its pastor was covered by the "Concordia Plan". The congregation pays for this plan which is a comprehensive insurance plan, but it does not include coverage for workers' compensation.

Counsel for the appellant did not disagree with the statement that some Missouri Synod churches in Montana do provide workers' compensation coverage for their ministers.

At the time of the hearing, that classification code assigned to pastors was at the rate of .33 cents per $100.00 of payroll.

4

Procedurally this case has a long and somewhat complex history, going back to the fall of 1986. In summary, this matter is before this Court on appeal from an order on appeal of the Workers' Compensation Court of June 4, 1991, which upheld the findings of fact, conclusions of law, and order of the Department of Labor and Industry made on December 13, 1990.

Appellant argued before the Workers' Compensation Court that it was the sincerely held religious belief of the church that the pastor was not an employee of the church, but that the relationship was that of shepherd to flock. The Workers' Compensation Court initially found that the pastor was an employee of St. John's Lutheran Church, and not an independent contractor. The Workers' Compensation Court then held that such a designation did not violate the appellant's free exercise rights. The court found an overriding governmental interest and no infringement of the religious liberty being exercised.

Because the facts pertinent to this appeal have been stipulated to by the parties and are not in controversy, we limit our review to the determination of whether the Workers' Compensation Court's interpretation of the law is correct. Allen v. Treasure State Plumbing (1990), 246 Mont. 105, 803 P.2d 644.

I

Did the Workers' Compensation Court err in determining that the pastor is an employee of St. John's Lutheran Church for

5

purposes of the Workers' Compensation Act, and not an independent contractor?

Appellant argues that the pastor is an independent contractor and not an employee. Section **39-71-120,** MCA, defines an independent contractor as follows:

(1) An "independent contractor" is one who renders service in the course of an occupation and:

(a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact: and

(b) is engaged in an independently established trade, occupation, profession, or business.

**(2)** An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection **(1)** are met.

It is agreed that the pastor may receive remuneration for work from third parties, even if time is taken away from his parish work. Therefore, the pastor satisfies the second part of the statute which requires that an independent contractor must be engaged in an independently established trade, occupation, profession, or business. **As** is the case in most instances, the key element is that of control. Independent contractor status will be recognized only when the individual is free from control by the employer. The established standard for determination of independent contractor status in Montana is the "control test" as adopted by this Court in Sharp v. Hoerner Waldorf Corporation **(1978), 178** Mont. **419, 584** P.2d **1298.** This test is set out in

A. Larson's workmen's Compensation Law, Vol. 1C, § 44.00, pp. 8-32

(1952). The "control test," used to determine the right of control

in a given situation, requires the examination of four factors.

These factors are:

1.    Direct evidence of right or exercise of control:

2.    Method of payment;

3.    Furnishing of equipment: and

4.    Right to terminate.

Sharp, 584 P.2d at 1301-02.  In applying the four factors of the

"control test" to the facts of a particular situation, this Court

has noted that:

> [T]he consideration to be given these factors is not a
> balancing process, rather ". . . independent contractor-
> ship . . . is established usually only by a convincing
> accumulation of these and other tests, while employment
> . . . can if necessary often be solidly proved on the
> strength of one of the four items [above]."

Sharp, 584 P.2d at 1302.  After considering the facts in this case

in relation to the four factor "control test" the Workers'

Compensation Court concluded that:

> The vast majority of the tools of the Pastor's trade
> are supplied by the church, and this single factor is
> sufficient to establish an employer/employee
> relationship.  The Court will not address the remaining
> three factors, except to note that the substantial
> credible evidence supports the findings and conclusions
> of the hearing examiner.

The appellant argues on appeal that the Workers' Compensation

Court erred in not considering in more detail the other factors of

the control test of Sharp.  However, as has been noted, the

7

employer/employee relationship "can if necessary often be solidly proved on the strength of one of the four items." Sharp, 584 P.2d at 1302. The Workers' Compensation Court determined that the furnishing of equipment by the church was sufficient to establish that the pastor is an employee and not an independent contractor. We agree.

St. John's Lutheran Church provides the pastor with an office, place of worship, hymnals, a staff consisting of a full-time secretary, part-time bookkeeper, custodian, and groundskeeper. The church also provides other items necessary for the pastor to perform his services. The Workers' Compensation Court found that this item alone would be sufficient to establish an employer/employee relationship. Appellant argues that despite the furnishing of equipment, the pastor is truly an independent contractor. Appellant cites to this Court's opinion in Johnson v. Montana Department of Labor and Industry (1989), 240 Mont. 288, 291, 783 P.2d 1355, 1357-58, wherein we stated:

> We feel that whether a person performing services is an employee or an independent contractor is the question before us, and statutes used as guides in making such determinations must not be distorted to allow persons who are truly independent in their operation to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship.

Appellant is correct in stating that persons who are truly independent in their operations according to the standards established for determining that issue should not be held to be employees. However, the furnishing of equipment is strong evidence

8

of control and of a lack of independence and by itself is sufficient to establish the pastor's status as an employee. As this Court has stated:

> [W]hen an employer furnishes valuable equipment, an employment relationship almost invariably exists, but the test does not cut in both directions with equal force. Proof showing the worker furnishes his own equipment is not necessarily fatal to a finding of employee status.

Solheim v. Tom Davis Ranch (1984), 208 Mont. 265, 273-74, 677 P.2d 1034, 1038. The furnishing of valuable equipment supports the Workers' Compensation Court's finding that the pastor is an employee. We note that aspects of the method of payment and the church's right to terminate the pastor also indicate the pastor is an employee. However, we need not discuss these factors, as we hold that the Workers' Compensation Court was correct in finding that the furnishing of valuable equipment was sufficient to establish that the pastor is an employee.

## II

Did classifying the appellant's pastor as an employee, which is contrary to the appellant's sincerely held religious beliefs, violate the appellant's right of free exercise of religion guaranteed under the First Amendment to the United States Constitution and Article 11, § 5, of the Montana Constitution?

The First and Fourteenth Amendments of the United States Constitution prohibit both Congress and the states from enacting any law which prohibits the free exercise of religion. Article 11, § 5, of the Montana Constitution also proscribes the promulgation

9

of laws prohibiting the free exercise of religion. The right to freely exercise one's religious beliefs without the interference of the state is one of the most cherished and protected liberties in our society. The wall separating church and state is not absolute, however, and some governmental impacts on religious freedoms have long been recognized as being constitutionally permitted. Cantwell v. State of Connecticut **(1940)**, **310** U.S. **296, 60** S.Ct. **900, 84** L.Ed. **1213.** The determination of whether the impact or interference by the government violates the right of free exercise of religion is a difficult one. As former Chief Justice Burger noted while writing for the majority of the United States Supreme Court in one of that Court's landmark decisions on church/state relations, "[c]andor compels acknowledgment . . . that we can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law." Lemon v. Kurtzman **(1971)**, **403** U.S. **602, 612, 91** S.Ct. **2105, 2111, 29** L.Ed.2d **745, 755.**

The free exercise of religion clause was recently discussed by this Court in Miller v. Catholic Diocese of Great Falls **(1986)**, **224** Mont. **113,** 728 P.2d **794.** In <u>Miller</u>, this Court adopted the following standard to be used as a guide on the application of the free exercise clause:

> The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion.

10

Miller, 728 P.2d at 796 (quoting from Wisconsin v. Yoder (1972), 406 U.S. 205, 215, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15, 25). Miller involved a suit by a former parochial school teacher. The issue in Miller was whether the free exercise clause barred consideration of the plaintiff's wrongful discharge complaint in which she alleged a breach of the covenant of good faith and fair dealing in her discharge for failing to maintain discipline in the classroom. We held that a judicial determination of the presence or absence of good faith on the part of the school administrators:

> [W]ould impinge upon elements of the teaching of religion, or the free exercise of religion. We conclude that discipline in the classroom is so intertwined with teaching which in turn is intertwined with religious principles that a court cannot properly make the determination requested here without interfering with a legitimate claim to the free exercise of religion.

Miller, 728 P.2d at 797

It is well established, however, that the state may regulate affairs impacting religious activity when there is an overriding governmental interest in so doing. United States v. Lee (1982), 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127. The State Fund argued, and the Workers' Compensation Court agreed, that the provision for workers' compensation is such an overriding governmental interest. When alleging a violation of free exercise it must be shown that the religious belief is sincerely held and that there is or will be some government prohibition of the free exercise of that belief. Thomas v. Review Board of Indiana Employment Security Division (1981), 450 U.S. 707, 101 S.Ct. 1425,

11

67 L.Ed.2d 624. In this instance, the respondent concedes that the appellant's religious belief in the shepherd/flock doctrine is sincerely held. However, respondent argues that the impact of classifying the pastor as an employee is indirect and diminimus, and in no way prohibits the appellant's free exercise of that belief.

The appellant argues that by classifying the pastor as an employee of St. John's Lutheran church, the State Fund and the Workers' Compensation Court have involved themselves in the relationship between the church and the pastor. This involvement led to the classification of the pastor as an employee of the church, which is contrary to the sincerely held beliefs of the appellant, and is violative of the First Amendment prohibition against laws prohibiting the free exercise of religion.

Appellant presented evidence at the hearing by Dr. George Wollenberg, an expert in church/pastoral relationships, of the Missouri Synod Lutheran Churches. He stated that it is of great importance to the church that their pastors not be considered employees because the "pastor must have the freedom to teach and to preach and to guide people in accordance with the word of God, according to the confessions of our Church . . . ." If the pastor is subject to being fired by the congregation, it places an almost insurmountable obstacle in the way of carrying out his duties and responsibilities to God to proclaim the word of God.

12

Appellant relies on the case of McClure v. Salvation Army (5th Cir. 1972), 460 F.2d 553, for the proposition that the relationship between a church and its pastor is a matter of singular ecclesiastical concern. Appellant quotes the following from McClure:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church.

McClure, 460 F.2d at 558-59.

McClure is distinguishable from the present case in that the designation of the pastor as an employee for purposes of workers' compensation only affects the relationship between the church and the workers' compensation system. There is no internal impact or infringement on the relationship between the church and its pastor, or on their sincerely held religious beliefs. In fact, the church did pay premiums to the State Fund for several years for workers' compensation coverage for the pastor. There was no evidence presented showing this in any way affected the relationship between the church and its pastor. The present case is also distinguishable from our decision in Miller in that the designation of the pastor as an employee does not involve the state in an

13

internal matter of the church which would result in a prohibited interference.

We affirm the Workers' Compensation Court's holding that the pastor is an employee and not an independent contractor. We also affirm the Workers' Compensation Court's holding that designating the pastor as an employee does not violate appellant's right to free exercise of religion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

14

February **6,** 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Alden Pedersen
PEDERSEN & HARDY
1645 Ave. D
Billings, MT 59102

Laurence A. Hubbard
State Compensation Insurance Fund
5 S. Last Chance Gulch
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy