NO.   94-129

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

CURT DAVID,

      Petitioner and Appellant,

  -v-

STATE COMPENSATION MUTUAL INSURANCE FUND,

      Respondent and Insurer for,

MIKE McCOY,

      Employer.

**FILED**

NOV 14 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
              State of Montana
              The Honorable Michael **McCarter,** Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Patrick R. Sheehy, Halverson, Sheehy & Plath,
          Billings, Montana

      For Respondent:

          Dan Whyte, Legal Counsel, State Compensation Mutual
          Insurance Fund, Helena, Montana

Submitted on Briefs: September 1, 1994

Decided: November 14, 1994

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a Workers' Compensation Court decision in favor of the State Fund's method of calculating benefits for claimant David. We affirm.

We consider the following issues on appeal:

I. Did the Workers' Compensation Court err in determining the temporary total disability rate to be paid to claimant David?

II. Did the Workers' Compensation Court properly deny attorney fees?

III. Did the Workers' Compensation Court properly deny an award of a 20% penalty pursuant to § 39-71-2907, MCA (1991)?

Claimant Curt David (David) was hired by Mike McCoy to do ranch work for a period of one day with compensation of $50.00 for that day's work. At the time of this employment, David was also self-employed as a massage therapist for the YMCA in Billings, Montana, and anticipated future work on the rodeo circuit as a rodeo clown. David testified that he had oral contracts to work twelve rodeos as a rodeo clown throughout the season.

During the one day David worked for Mike McCoy, his horse bucked, forcing him to slam into his saddle and breaking a fusion rod that had been inserted in his spine during a 1986 surgery. In 1986, David was thrown from his horse, fracturing several parts of his spine. The injuries required the insertion of fusion rods in the spine for support. These rods were never removed.

David filed a workers' compensation claim. State Fund calculated David's compensation by interpreting § 39-71-123, MCA

2

(1991), to mean that a person who is hired to work only one day has an average weekly wage equalling that one day's wages. Here, the State Fund found that David had earned $50 and that his benefits would amount to two-thirds of that, or $33.33 per week. David received temporary total disability benefits for a period of eighteen weeks and four days.

As a result of this calculation, David appealed to the Workers' Compensation Court. The Workers' Compensation Court entered its Findings of Fact, Conclusions of Law and Judgment on March 18, 1994, concluding that, based upon § 39-71-123, MCA (1991), the State Fund properly determined David's temporary total disability wage rate for his employment with Mike McCoy.

From these findings and conclusions, David appeals to this Court.

⊥

Did the Workers' Compensation Court err in determining the temporary total disability rate to be paid to claimant David?

David argues that the State Fund should have calculated his benefits on a total of what he would have earned had he worked for Mike McCoy for a week, or $250. This is because he was employed full time in other jobs and the award of $33.33 per week does not represent an accurate picture of his wages. However, David contends that his argument does not mean that he feels the State Fund should have aggregated his actual wages from all his jobs.

The State Fund argues that the Workers' Compensation Court was

correct in interpreting the entire statute instead of only one subsection of § 39-71-123, MCA (1991). The State Fund argues that the statute clearly dictates that when a sole proprietor has not provided workers' compensation coverage for his business, he cannot include money made from the business in the total from which award benefits are calculated. The State Fund contends that because David had his own massage business he was a sole proprietor. Further, David's alleged contracts with the rodeos were not in force yet and could not be included in the award either.

At issue 'here is the Worker's Compensation Court's interpretation of § 39-71-123, MCA (1991). A conclusion of law made by a Workers' Compensation Court is reviewed to determine whether the conclusion is correct. Gibson v. State Compensation Mut. Ins. Fund (1992), 255 Mont. 393, 842 P.2d 338.

The court concluded that the State Fund had calculated David's award correctly. That award came to $33.33 based upon the figure of $50 that he made while working for Mike McCoy. David argues that only § 39-71-123(3)(a), MCA (1991), applies. State Fund argues that the entire statute must be used to determine the benefit rate for David, including the limitations placed on an award by subsection 4(c) of the statute.

The pertinent statute in its entirety reads:

Wages defined. (1) "Wages" means the gross remuneration paid in money, or in a substitute for money, for services rendered by an employee. Wages include but are not limited to:
(a) commissions, bonuses, and remuneration at the regular hourly rate for overtime work, holidays, vacations, and

4

sickness periods;

(b) board, lodging, rent, or housing if it constitutes a part of the employee's remuneration and is based on its actual value: and

(c) payments made to an employee on any basis other than **time** worked, including but not limited to piecework, an incentive plan, or profit-sharing arrangement.

(2) Wages do not include:

**(a)** employee expense reimbursements or allowances for meals, lodging, travel, subsistence, and other expenses, as set forth in department rules:

**(b)** special rewards for individual invention or discovery:

(c) tips and other gratuities received by the employee in excess of those documented to the employer for tax purposes;

**(d)** contributions made by the employer to a group insurance or pension plan; or

(e) vacation or sick leave benefits accrued but not paid.

(3) For **compensation** benefit purposes, the average actual **earnings** for the four nay periods immediately nreceding the iniurv are the employee's wages, except if:

(a) the term of **employment** for the same **employer** is less than four **pay** periods, in which case the employee's wages are the hourly rate times the number of hours in a week for which the **employee** was hired to work; or

(b) for good cause shown by the claimant, the use of the four pay periods does not accurately reflect the claimant's employment history with the employer, in which case the insurer **may** use additional pay periods.

(4)**(a)** For the purpose of calculating compensation benefits for an employee working concurrent employments, the average actual wages must be calculated as provided in subsection (3).

(b) The compensation benefits for a covered volunteer must be based on the average actual wages in his regular employment, except self-employment as a sole proprietor or partner who elected not to be covered, from which he is disabled by the injury incurred.

**(c)** The compensation benefits for an employee working at two or more concurrent remunerated employments must be based on the **aggregate** of average actual wages of **all** **employments, except** self-employment as a sole **proprietor** or partner who elected not to be covered, from which the **employee** is disabled **by** the injury incurred.

(5) The compensation benefits and the payroll, for premium purposes, for a volunteer firefighter covered pursuant to 39-71-118(4) must be based upon a wage of not less than $900 a month and not more than 1 and 1/2 times the average weekly wage as defined in this chapter.

Section 39-71-123, MCA (1991); relevant parts of this statute have been highlighted.

The Workers" Compensation Court relied on both § 39-71-123(3)(a) and § 39-71-123(4)(c), MCA. According to the court, David worked less than four pay periods for McCoy; therefore, the court found that the State Fund was correct in using the exact number of hours worked and the exact pay received as stated in subsections 3(a) and 4(a). This amounted to eight hours at $6.25 or $50.00. The court also looked at the fact that David had other employment. The other employments, however, were not employer-employee situations.

David was self-employed as a massage therapist: he was not an "employee." Thus, the court found him to be a sole proprietor who had elected not to be covered by workers' compensation insurance and pursuant to subsection 4(c) he could, therefore, not include any of the money made from this work. The court further denied inclusions of potential amounts provided by future contracts for work as a rodeo clown. The court determined that the future contracts were also obtained by David in a capacity as sole proprietor.

The Workers' Compensation Court was correct in considering § 39-71-123, MCA (1991) in its entirety; a statute must be read as a whole. Dover Ranch v. Yellowstone County (1980), 187 Mont. 276, 609 P.2d 711. While David chooses only subsection 3, that subsection cannot be interpreted in isolation. The entire statute

6

provides more than the rote "four-previous-pay-periods" formula for which David argues. The statute anticipates a situation like David's by stating that if the work was not equal to four-pay-periods for the same employer, then the "actual" hours worked and the "actual" pay obtained must be used. This is the exact calculation used by the State Fund and the Workers' Compensation Court.

David was hired for one day of work. He did not work for McCoy before this one day nor did he work for him after. David argues that the State Fund should have projected his weekly salary to $250 which is what he would have earned had he worked for McCoy for a week. However, this total does not resemble at all the "actual average wages" received from McCoy. Section 39-71-123(3), MCA (1991). The "actual" wages were only $50.

Yet, David cites us to Lovell v. State Compensation Insurance (1993), 260 Mont. 279, 860 P.2d 95, for the proposition that his method of calculation is appropriate. David claims that Lovell permits him to project his one day's wages to that of what a full week would have been. David believes that because he was employed full-time, albeit at other work, he is entitled to make this projection.

Lovell does not support David' reasoning. The Workers' Compensation Court in Lovell determined that § 39-71-123(3)(a), MCA (1987), precluded aggregation of wages from other sources when determining an employee's award benefit. On appeal, we concluded

that this was not a correct interpretation of the law. We then considered the correct interpretation of **"wages"** and the changes made to the workers' compensation law in 1987.

We concluded that the 1987 changes did not affect the long-standing rule permitting aggregation of concurrent employment. However, we were cognizant that because of the Workers' Compensation Court's stance on non-aggregation, the court had not considered whether Lovell met the definition of "employee" with regard to other work he may have been performing or whether other income constituted wages from concurrent employment. We, therefore, remanded the action back to the court for this determination.

Here, the Workers' Compensation Court did make a determination that David was not an "employee" but was a **"sole** proprietor" who had made no workers' compensation provisions for his business. Such a designation means that the benefit calculations must be made without consideration of any money earned from the business.

David had the burden of proving he was an "employee" in order that his other full-time employment could be considered for his benefit award. Our statutes provide very long and detailed definitions of what constitutes an "employee" and an "employer." Sections 39-71-117 and 39-71-118, MCA (1991). An employee is not a **"sole** proprietor." Section 39-71-118(3)(d), MCA (1991). Thus, "persons who are truly independent in their operations according to the standards established for determining that issue should not be

held to be employees." St. John's Lutheran v. State Comp. Ins. Fund (1992), 252 Mont. 516, 523, 830 P.2d 1271, 1276.

Whether a person is an "employee" is important because both subsections 3(a) and 4(a) calculate the award benefits for "employees." However, subsection 4(c) contains an exclusion for sole proprietors. Subsection 4(c) states that when a sole proprietor elects not to provide workers' compensation coverage he cannot include money derived from his business for the purpose of determining his benefit.

David admits the YMCA merely supplied him with a room in the YMCA facility. The record indicates that the YMCA did not control his business as a massage therapist. The record clearly shows that within his role as massage therapist, he was "free from control." David independently established his business and ran it himself; he was not an employee. Therefore, we conclude that the State Fund had to consider the statutory limitations put on sole proprietors by subsection 4(c) of § 39-71-123, MCA (1991). Because David has not supplied evidence that he paid workers' compensation premiums, the exclusions in 4(c) require that any money David received from his massage business must not be counted toward his award benefit.

Without "employee" status for David's alleged full-time work, the State Fund and the Workers' Compensation Court had to rely on the specific calculations called for in subsection 3(a) and 4(a), plus the exclusions found in 4(c). These calculations call for inclusion of "actual" hours worked per week for "actual" wages

received. This total is then multiplied by 66 and 2/3% to get the benefit amount for temporary total disability. Section 39-71-701, MCA (1991). State Fund calculated David's benefits accordingly as did the Workers' Compensation Court.

We hold that the Workers' Compensation Court did not err in determining the temporary total disability rate to be paid to claimant David.

II

Did the Workers' Compensation Court properly deny attorney fees?

The statute governing payment of attorney's fees states:

> [if] the case is brought before the workers' compensation judge for adjudication of the controversy, and the award granted by the judge is greater than the amount paid or offered by the insurer, a reasonable attorney's fee and costs . . . may be awarded by the judge in addition to the amount of compensation.

Section 39-71-612(1), MCA (1991).

Here, the Workers' Compensation Court agreed with the award calculated by the State Fund. Therefore, because the award by the court was the same, attorney fees would be inappropriately awarded to David.

We hold that the Workers' Compensation Court properly denied attorney fees.

III.

Did the Workers' Compensation Court properly deny an award of a 20% penalty pursuant to § 39-71-2907, MCA (1991)?

The workers' compensation judge may increase by 20% the

10

> full amount of benefits due a claimant during the period
> of delay or **refusal** to pay . . .

Section **39-71-2907(1)**, MCA (1991).

The insurer here did not deny the full amount of benefits, but calculated the benefits correctly.   Therefore,   there exists no basis for a 20% penalty.

The Workers' Compensation Court properly denied an award of a 20% penalty pursuant to § 39-71-2907, MCA (1991).

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

November 14, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Patrick R. Sheehy
HALVERSON, SHEEHY & PLATH, P.C.
P.O. Box 1817
Billings, MT 59103-181'7

Dan Whyte, Legal Counsel
State Compensation Mutual Insurance Fund
P.O. Box 4759
Helena, MT 59604-4759

ED SMITH
CLERK OF THE, SUPREME COURT
STATE OF MONTANA

BY:＿＿＿＿＿＿＿＿＿＿
Deputy