No. 87-182

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ALAN MILENDER,

　　　　　Claimant and Respondent,

　　-vs-

JOHN CARPENTER, d/b/a ROCKY MOUNTAIN
RODEO, Employer,
　　　　and
STATE COMPENSATION INSURANCE FUND,

　　　　　Defendant and Appellant.

---

APPEAL FROM:　The Workers' Compensation Court, The Honorable Timothy
　　　　　　　Reardon, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　Browning, Kaleczyc, Berry & Hoven; Oliver Goe, Helena,
　　　　　Montana

　　　For Respondent:

　　　　　Edward A. Cummings, Missoula, Montana

---

Submitted on Briefs:　Oct. 1, 1987

Decided:　December 31, 1987

Filed:

_Ethel M. Harrison_

――――――――――――――――――
　　　　　　Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


State Compensation Insurance Fund appeals an order from the Workers' Compensation Court awarding claimant $7,146.09 for temporary total benefits, 20 percent penalty on that amount and attorney fees.

We affirm the decision of the Workers' Compensation Court.

The issues presented for our review are as follows:

1. Did the Workers' Compensation Court err in awarding temporary total disability benefits from the date of claimant's injury, when he continued to receive an amount equal to his preinjury salary although not actually working?

2. If entitled to such benefits, is the correct amount properly based on combined temporary total benefits from both of claimant's employments or solely on his employment with the insured?

3. Did the Workers' Compensation Court err in awarding a penalty pursuant to § 39-71-2907, MCA?

4. Did the Workers' Compensation Court err in holding that claimant was entitled to attorney fees pursuant to § 39-71-611, MCA?

The uncontested facts are as follows:

Claimant, Alan Milender, was severely injured August 10, 1985, in Superior, Montana, when gored by a bull. Both of Milender's legs sustained compound fractures, one of which later developed a bone infection. At the time of the injury, claimant was working in a temporary part-time capacity for John Carpenter d/b/a Rocky Mountain Rodeo. His job consisted of tending rodeo stock for approximately two hours a day for two days.

Since 1975, until he was injured, claimant was employed full-time for Sletten Construction Company working as a working construction foreman. At the time of his injury, claimant was earning $600 per week computed at a rate of $15 per hour for a 40 hour work week. Claimant received this amount regardless of actual hours worked.

Milender received weekly Workers' Compensation temporary total benefits of $28.33 from August 11, 1985, through October 15, 1986, based on his employment with Rocky Mountain Rodeo. From the date of his injury until February 15, 1986, Sletten Construction Company continued to pay claimant $600 per week with usual state and federal tax withholdings. The $600 per week was discontinued on February 15, 1986, because it became evident that claimant would not be able to return to work in the foreseeable future.

On April 23, 1986, Milender submitted a letter to the State Fund requesting benefits of $293 per week. This would be the amount owed if his Sletten Construction wages were also used in the basis for computing temporary total benefits. State Fund denied his request for an increase on June 18, 1986. On June 26, 1986, claimant was threatened with forclosure on his home. On October 15, 1986, State Fund agreed to pay $293 per week retroactively from February 15, 1986 and agreed that for the purpose of computing benefits, wages from Sletten Construction would be included in the basis amount.

A hearing was held to determine whether claimant was entitled to $293 per week from August 11, 1985, the date of injury, not just from February 15, 1986, the date Sletten discontinued paying Milender $600 per week.

The hearing examiner concluded, and the Workers' Compensation judge adopted the judgment that claimant should have received full benefits from August 11, 1986, as well as an award of attorney fees and a 20 percent penalty against

conclusions on conflicting evidence, this Court will not set them aside unless clearly erroneous. It is not our function to determine whether there is substantial credible evidence to support contrary findings. Currey v. 10 Minute Lube (Mont. 1987), 736 P.2d 113, 115, 44 St.Rep. 790, 792. We will not disturb this decision.

Sletten's president testified further that although he considered Milender an employee as long as he was being paid, the payments were in no way intended to be in lieu of Workers' Compensation benefits. In this case, Sletten is not even responsible for Milender's benefits. On occasion, when injured Sletten employees were receiving Workers' Compensation benefits, Sletten continued to pay an amount equal to their wages as a gesture of good will and good business practice.

To adopt the argument of the State Fund in this case would be to grant a benefit to the State Fund at Milender's expense. Sletten did not intend to benefit State Fund by paying Milender $600 per week for six months. Sletten's payments were gratuitous and are not a valid reason for reducing Milender's benefits to $28.33 per week during the six month period.

We hold that the Workers' Compensation Court did not err by concluding that payments made by Sletten to Milender from August 11, 1985, through February 15, 1986, were not "wages."

II.

Is the amount of benefits correctly computed from a basis of just Milender's employment with Rocky Mountain Rodeo, or from a combination of both employments?

Milender's employment with Sletten Construction was terminated due to injuries sustained while working for Rocky Mountain Rodeo. He was unable to perform duties associated with his position as working foreman. As previously

- 6 -

State Fund on the amount owed from August 11, 1985, through February 15, 1986. From this judgment, State Fund appeals.

I.

Is Milender entitled to temporary total benefits from the date of his injury even though he continued to receive $600 per week from an employer who is not a party to this lawsuit?

The parties agree that Milender's wages from two employments, the one at Sletten Construction, and the other for Rocky Mountain Rodeo, should be combined for the purpose of computing the basis of Milender's benefit rate. The injury suffered while tending rodeo stock made it impossible for Milender to work at either job.

> The general rule is that earnings from concurrent employments may be combined if the employments are sufficiently similar so that a disabling injury at one employment would necessarily disable the employee in respect to the other employment.

Harmon v. State Comp. Insurance Fund (Mont. 1986), 716 P.2d 605, 607, 43 St.Rep. 514, 516.

State Fund has agreed to make payments for the time period after Sletten Construction discontinued giving Milender $600 per week. At issue is a period of six months, between August 11, 1985, and February 15, 1986, when Milender was not able to work due to his injuries. State Fund denies liability for those six months, claiming that Milender does not fall under the definition of temporary total disability during that time.

Section 39-71-116(19), MCA (1985), defining temporary total disability as:

> . . . a condition resulting from an injury as defined in this chapter that results in total loss of wages and exists until the injured worker is as far restored as the permanent character of the injuries will permit . . .

"Wages" are defined in § 39-71-116(20), MCA (1985), as "[t]he average gross earnings received by the employee at the time of the injury for the usual hours of employment in a week . . ." (Emphasis added.)

In Gee v. Cartwheel Restaurant (1982), 197 Mont. 335, 642 P.2d 1070, this Court held that wages which were received by an employee from one employer while he continued to receive his usual monthly salary from a concurrent employer were "gratuitous wages." Benefits for disabilities are based on the usual hours of employment of the worker. See LaVe v. School Dist. No. 2 (Mont. 1986), 713 P.2d 546, 43 St.Rep. 165.

Likewise, this Court in Gee emphasized that § 39-71-116(20), MCA (1985), only covered amounts received for usual weekly employment. When no work was performed, amounts received were considered to be gratuitous.

From August 11, 1985, through February 15, 1986, Sletten Construction paid Milender $600 per week for no work done because they hoped that he would return to work for them when he recovered. Sletten's president testified that Milender was considered a key employee. It was worth $600 per week to the company to have him as an employee when well. On one occasion, Sletten asked Milender to check on a job site near his home. Milender testified that he drove by the job site two times, without getting out of his vehicle, and responded back to Sletten as to the status of the construction project. "Usual hours of employment" does not mean strict adherence to actual work for every hour compensated. Denend v. Bradford Roofing (Mont. 1985), 710 P.2d 61, 42 St.Rep. 1778. The Workers' Compensation Court did not conclude that Milender's quick drive by a job site two times in a six month period constituted actual performance of his "usual weekly employment." When the lower court bases its findings and

discussed, it is entirely appropriate for purposes of benefits calculation to combine the wages of concurrent employments when both are affected by an injury.

We hold that the Workers' Compensation Court did not err in calculating Milender's benefits from August 11, 1985, at a rate of $293 per week.

## III.

Was a 20 percent penalty on the amount owed between August 11, 1985, and February 15, 1986, properly awarded?

A penalty pursuant to § 39-71-2907, MCA, is properly awarded when an insurer unreasonably delays or refuses to pay benefits owed. Withholding or a delay of payment must be unreasonable. Unreasonableness is a question of fact. Paulsen v. Bozeman Deaconess Foundation Hospital (Mont. 1984), 673 P.2d 1281, 1283, 41 St.Rep. 62, 64. On appeal, a finding of unreasonableness will not be overturned if supported by substantial evidence. Coles v. Seven Eleven Stores (Mont. 1985), 704 P.2d 1048, 1052, 42 St.Rep. 1238, 1242.

It is not this Court's job on review to determine whether there was substantial credible evidence to support an opposing position. The State Fund refused to pay Milender any amount above $28.33 per week from August 11, 1985, through October 15, 1986. In October, State Fund agreed to pay Milender the correct amount of $293 per week retroactively only from February 15, 1986, not from the date of his injury. This substantially supports the imposition of a penalty.

We affirm the Workers' Compensation Court on the issue of a 20 percent penalty.

## IV.

Is claimant entitled to attorney fees?

Section 39-71-611, MCA, states:

> In the event an insurer denies liability for a claim for compensation or terminates compensation benefits and the claim is later adjudged compensable by the workers' compensation judge or on appeal, the insurer shall pay reasonable costs and attorneys' fees as established by the workers' compensation judge.

State Fund denied liability for Milender's claim for benefits for the time period between August 11, 1985, and February 15, 1986. The Workers' Compensation Court and this Court have both "adjudged" that claim compensable.

We affirm the award of reasonable attorney fees.

Affirmed on all issues.

_____
Justice

We Concur:

_____

_____

_____
Justices

Mr. Justice L. C. Gulbrandson dissenting.

I respectfully dissent to the affirmance of the award of temporary total benefits for the period from the date of injury to the date of termination of claimant's employment with Sletten Construction Company, February 15, 1986. Because I believe that award to be in error I also disagree with the affirmance of a twenty percent penalty and attorney fees.

The majority has misinterpreted this Court's holding in Gee v. Cartwheel Restaurant, supra, by quoting "this Court held that wages which were received by an employee from one employer while he continued to receive his usual monthly salary from a concurrent employer were 'gratuitous wages.'" In that case, this Court reversed the increased award of temporary total benefits and stated:

> Applying even the most liberal statutory construction favoring the claimant, to conclude that his average gross earnings should include wages from this job at which he is no longer employed does not fairly or reasonably represent wages lost from his usual weekly hours of employment. The amount of compensation must bear some reasonable relation to the loss sustained on account of disability.
>
> . . .
>
> In essence, the Workers' Compensation Court has determined that the claimant is entitled to temporary total disability benefits based upon lost wages for two concurrent jobs, while the evidence in no way establishes that the claimant was actually concurrently employed at the Book Store or had suffered a loss of Book Store wages. To hold that the claimant should receive benefits based upon more weekly hours than he has actually ever

9

> worked does not represent compensation based upon his *usual* *weekly* *hours* *of* *employment.* (Emphasis in original.)

*Gee*, 642 P.2d at 1071, 1072. Claimant Gee was found by this Court to be employed by one employer at the time of his injury, and the claimant here obviously had two employers at the time of his injury.

In my view the issue is whether the employer-employee relationship between Sletten Construction Company and the claimant continued until February 15, 1986 and if it did, did the claimant suffer a total loss of wages to be entitled to benefits based upon two employments under § 39-71-116(19), MCA (1985).

In this case, the critical evidence regarding the payment of $600 per week by Sletten Construction Company from the date of injury to February 15, 1986, is contained in the depositions of the claimant and Robert Robertson, president of Sletten Construction Company, and this Court is entitled to judge the weight to be given such record testimony.

The evidence in this case is undisputed that Sletten Construction Company had a corporate policy of paying disabled supervisory personnel, such as the claimant, full wages until such time as it was determined that the disabled supervisor would be unable to return to work within a reasonable period of time. The claimant had been a supervisor with Sletten since 1978 and, at the time of the injury on his concurrent two-day job, was paid $600 per week whether he worked no hours a week or sixty hours a week. The testimony is undisputed that Sletten Construction Company paid the claimant his full $600 per week salary, less withholding for federal and state income tax and for Social Security purposes until February 15, 1986 at which time the

10

corporate president made the decision to terminate claimant as an employee. Sletten Construction Company further paid workers' compensation premiums based upon the salary paid to claimant until February 15, 1986. The claimant attended the company Christmas party in 1985, and readily inspected a bridge construction site on several occasions prior to February 15, 1986, at the request of his employer without claiming additional reimbursement.

In my opinion, for the majority to hold, in effect, that the $600 weekly salary benefits were gratuitous and that the claimant suffered a total loss of wages from Sletten Construction Company from August 10, 1985 until February 15, 1986 is unrealistic and ignores normal corporate business practices and specifically the corporate practice of Sletten Construction Company. See, Larson, Workmen's Compensation Law, § 57.42:

> An occasional court will say that such a payment is to be deemed a gratuity, but this, in the absence of special facts indicating a charitable motive, is unrealistic. In fact, in the case of corporate employers, it is doubtful that the management has the right to give away the corporation's money as gratuities even if it wanted to. As a matter of corporation law, it would have to be assumed that the payment was made in discharge of a legal obligation, if any such actual or potential obligation could be found that would reasonably account for the expenditure.

The effect of the majority decision is to award the claimant temporary total disability benefits which, combined with the salary received from Sletten Construction Company, result in a post-injury monthly income of $3,572, far in excess of his regular salary of $2,400. This result in my

11

judgment, does not comply with the Gee requirement that "the amount of compensation must bear some reasonable relation to the loss sustained on account of disability."

I would reverse upon the basis that the award tends to make the Workers' Compensation system unworkable, and is not in accord with § 39-71-116(19), MCA (1985) and the previous holdings of this Court.

_V.C. _____

Justice

12