NO.  **91-221**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

SAMUEL J. GRENZ,

     Claimant and Appellant,

  -vs-

FIRE AND CASUALTY OF CONNECTICUT,

     Insurer, Defendant and Respondent.

FILED

NOV - 5 1991

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
                The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Samuel J. Grenz, Pro Se, Whitefish, Montana.

     For Respondent:

          Terry G. Spear, Matovich, Addy & Keller, Billings,
          Montana.


                        Submitted on Briefs:  July 25, **1991**

                               Decided: November 5, 1991

Filed:

                     Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The claimant, Samuel J. Grenz, appearing pro se, appeals from the judgment of the Workers' Compensation Court denying him workers' compensation benefits. We affirm.

The dispositive issue on appeal is whether the Workers' Compensation Court erred in ruling that the claimant is not permanently totally disabled as a result of his August 22, 1984 right elbow injury and that the claimant's psychological problems are not compensably related to that injury.

At the time of trial the claimant was forty-six years old, married and living in Whitefish, Montana. His work history includes employment as a laborer, mill worker, driller and miner. The claimant has been a body builder since he was eight years old.

On August 22, 1984, the claimant bumped his right elbow on a steel handrailing while working for American Stud Company in Flathead County; the claimant had been working as a side edger for his employer since 1979. The elbow became sensitive and inflamed and the claimant was examined the next day by Dr. Ken McFadden at the Family Physicians Clinic in Whitefish. The injury involved limited medical bills and no lost wages. The claimant's medical bills were paid by the workers' compensation insurer, Fire and Casualty of Connecticut.

On January 29, 1985, Dr. Ronald A. Miller, the claimant's treating physician since 1977, saw the claimant for discomfort in both elbows, both wrists, both hands, and his cervical, thoracic and lumbar spine. Based on laboratory data, x-rays, the claimant's

personal history and a physical examination, Dr. Miller diagnosed the claimant as having degenerative arthritis which is an inflammatory disease of the joints. Dr. Miller also discussed with the claimant in February 1985 the probability that the claimant's continued weight lifting activities would make his symptoms worse.

On November 18, 1985, Dr. Miller saw the claimant again and diagnosed his condition as degenerative arthritis of his fingers, wrists and shoulders, and recurrent bursitis and epicondylitis of his elbows. That same day, Dr. Miller gave the claimant a note in which he recommended that the claimant not do any lifting or physical use of his elbows and shoulders for several weeks due to a flare-up of bursitis and arthritis.

The claimant gave the note to his employer and reported that his condition at that time was related to his August 22, 1984 right elbow injury. The employer then notified the insurer that the claimant would be off work for several weeks due to his 1984 elbow injury. Thereafter, the insurer assumed liability for the injury and paid compensation and medical benefits to and for the claimant. The claimant received temporary total disability benefits. The claimant has not worked since November 18, 1985 due to progressive degenerative problems. The insurer continued to pay workers' compensation benefits to the claimant through the time of trial.

Dr. Miller's deposition testimony was that the claimant's work activity over a period of time was probably more responsible for the claimant's degenerative arthritis than his body building. He could not provide any reasonable medical explanation of how the claimant's left elbow, left thumb, index finger and joint pain

3

could have been the result of bumping his right elbow at work.

Beginning in April **1986,** the claimant, complaining of lower back pain and stiffness, received a series of chiropractic adjustments to his lower back from Dr. Arvin R. Wilson. He had received similar treatments from Dr. Wilson from August **1977** to December **1979** and was directed to return if and when he needed further treatment. At the time the claimant returned for chiropractic treatments in **1986,** he was receiving workers' compensation benefits and had been off work for five months. However, the claimant never suggested to Dr. Wilson that his back problem was related to his bumped right elbow. When sixty-three chiropractic adjustments failed to improve the claimant's lower back condition, he was referred to a pain management specialist.

In February **1988,** at the insurer's request, the claimant was examined by a panel of multi-disciplinary medical specialists assembled and coordinated by Medical Management Northwest. The panel diagnosed the claimant **as** having lumbar degenerative disease attributable to both work-related injuries and the claimant's weight lifting avocation. In addition, the panel found x-ray evidence of calcification and abnormal bone formation in the claimant's right elbow and again traced the condition to his recurrent work-related injuries and aggravation from his weight-lifting activities. The panel felt that the claimant was at "maximum medical improvement" and further medical treatment was not needed at that time. In relation to psychological difficulties, the panel found that the claimant was suffering from a personality disorder and learning disability but determined that these

4

conditions were not work-related.

Subsequent to the panel's evaluation, the insurer, on August **24, 1988,** reduced the claimant's benefits from temporary total disability to permanent partial disability. The claimant's total disability status was reinstated on December 15, **1988,** retroactive to August **24,** 1988, following mediation of the claimant's claim. The claimant at this time received permanent total disability benefits.

Dr. John W. Hilleboe, an orthopedic surgeon who was a member of the medical panel, explained in his deposition that the medical panel's use of the phrase "work-related injuries" reflected its belief that the claimant's progressive degenerative problems may have resulted from heavy occupational or vocational activity as well as avocational activity. Dr. Hilleboe testified that the kind of degenerative changes that the claimant has experienced are not likely to result from an acute injury. He further testified that he found no significant difference between the condition of the claimant's two elbows and that he found no evidence that the claimant's back problems are related to the claimant's August **22, 1984** right elbow injury.

Dr. John V. Stephens, the director of the physical medicine and rehabilitation program at the Kalispell Regional Hospital Rehabilitation Center, was also a member of the medical panel which examined the claimant in February **1988** and he authored the panel's evaluation summary. Dr. Stephens testified in his deposition that he had no opinion as to whether the **1984** right elbow injury might be responsible for the problems found by the panel. He deferred

5

that question to Dr. Hilleboe. Dr. Stephens testified that nothing in his records relating to the medical panel's evaluation suggested that the 1984 right elbow injury was causally related to the chronic irritation of the claimant's left elbow or that that injury may have contributed to the claimant's back problems.

Dr. Herbert Gray is a psychiatrist who treated the claimant for major depression requiring hospitalizations in January 1986 and December 1989. Dr. Gray testified in his deposition that the claimant has suffered from chronic depression throughout his life. In a letter dated October 17, 1988, addressed "TO WHOM IT MAY CONCERN," he agreed with the medical panel's conclusion that the claimant's learning disability is not a consequence of his industrial accident. However, Dr. Gray believed that the industrial injury represented a greater insult to the claimant than would otherwise have occurred because the claimant overemphasized his physical ability.

Dr. Gray noted that due to serious abuse as a child, and perhaps other factors, the claimant had preexisting psychological problems. He further noted that the claimant's ability to fight with and intimidate people was a way of coping which the claimant learned as a child and continued to use as an adult. Dr. Gray did not testify that the claimant's hospitalizations or psychotherapy were caused by the claimant's 1984 right elbow injury.

Dr. James H. Mahnke, a neurosurgeon, examined the claimant on March 6, 1989. Based on x-rays and scans, Dr. Mahnke diagnosed cervical spondylosis at C6-7 and lumbar spondylosis with herniated discs at L4-5 and L5-S1. Dr. Mahnke testified in his deposition

6

that he did not know what caused the claimant's condition.

On March **7, 1990,** Dr. William Stratford, a psychiatrist, examined and tested the claimant on the insurer's behalf. Dr. Stratford testified in his deposition that the claimant suffered from anxiety and depression due to his loss of physical prowess and inability to work. However, Dr. Stratford could not opine to what extent the claimant's right elbow injury, as distinguished from the claimant's other medical complaints, may have contributed to his psychological problems.

In his May 2, **1990** petition to the Workers' Compensation Court, the claimant asserted that he was totally disabled as a result of his August 22, **1984** right elbow injury and requested that the insurer be ordered to convert all future benefits into a lump sum payment, assessed a statutory twenty percent penalty, and ordered to pay costs. The claimant also requested payment of the expenses from his **1989** hospitalization for depression and for continuing psychotherapy. The insurer disputed both the claimant's entitlement to a lump sum conversion and his disability status.

After a trial held on September 17, **1990,** the Workers' Compensation Court ruled that the claimant is not permanently totally disabled as a result of his August 22, **1984** right elbow injury and that his psychological problems are not compensably related to that injury. The claimant's motion for reconsideration or a new trial was denied. This appeal followed.

Did the Workers' Compensation Court err in ruling that the claimant is not permanently totally disabled as a result of his August 22, **1984** right elbow injury and that the claimant's

7

psychological problems are not compensably related to that injury?

The Workers' Compensation Court found that the claimant failed to establish, by a preponderance of the medical evidence, a causal connection between his current degenerative condition and his 1984 right elbow injury and, therefore, concluded that the claimant is not permanently totally disabled as a result of his August 22, 1984 right elbow injury. The Workers' Compensation Court also found that the psychological problems that the claimant experiences may have been aggravated by his loss of physical prowess, but that no medical evidence was presented showing that the claimant's loss of physical functioning is related to his 1984 right elbow injury. Based on this finding, the court concluded that the claimant is not entitled to payment for his 1989 hospitalization for depression or for continuing psychotherapy.

This Court will not overturn findings of fact of the Workers' Compensation Court if there is substantial credible evidence in the record to support them. Kraft v. Flathead Valley Labor & Contr. (1990), 243 Mont. 363, 365, 792 P.2d 1094, 1095. The Workers' Compensation Court's conclusions of law will be upheld if the tribunal's interpretation of the law is correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

The claimant raises several arguments challenging the decision of the Workers Compensation Court. Initially, the claimant asserts that the court's determination that he was not permanently totally disabled ignored the first issue in the pretrial order, which was whether the claimant is "totally disabled." He argues that disability may be temporary total or permanent total and by

*8*

limiting its decision to whether he is permanentlytotally disabled the Workers' Compensation Court changed the whole intent of the first issue to the insurer's advantage. We disagree. The claimant argued before the Workers' Compensation Court that the parties' stipulation in a prior action that the claimant was at that time **"presently"** permanently disabled, is res judicata in the present action. The Workers' Compensation Court rejected the claimant's position, stating that:

> The stipulation previously entered only binds the parties for the purposes of that action only, and it has no effect on subsequent litigation. Defendant refused such stipulation and it was agreed by both parties that it is the first issue for determination in this litigation.

In addition, in his petition to the Workers' Compensation Court the claimant sought a lump sum conversion of permanent total disability benefits. The issue of whether the claimant is permanently totally disabled necessarily had to be determined in order to reach his lump sum demand.

The claimant next asserts that the Workers' Compensation Court erred in finding that his current disabilities were not caused by his employment. He argues that, through his employment, he suffered a series of "micro-traumas" attributable to constant vibrations of machinery, heavy lifting, and multiple jars and jolts to his joints. The claimant asserts that these "industrial injuries," which he suffered after and in addition to this August 22, 1984 injury and which were reported to his employer, caused him to develop his degenerative joint disease.

The insurer argues that the claimant's sole basis for entitlement to benefits was his August 22, 1984 right elbow injury

and asserts that the claimant is now arguing a completely different theory on appeal than that which was presented to the Workers' Compensation Court. We agree. Our review of the record shows that the claimant admitted at trial that the sole basis for his claim to benefits in that proceeding was his **1984** injury.

Q. Your injury occurred in **1984?**

A. Right.

Q. That's the only industrial injury you claim: is that right?

A. Right. . . .

The claimant is limited on appeal to those issues which he presented to the Workers' Compensation Court. Baldwin v. Orient Express Restaurant **(1990), 242** Mont. **373, 376, 791** P.2d **49, 50.** Thus, on appeal we will consider only whether the Workers' Compensation Court properly determined that the claimant failed to establish a causal connection between his current physical condition and his August 22, **1984** right elbow injury and, therefore, was not permanently totally disabled as a result of the **1984** injury.

Section **39-71-116(13),** MCA **(1983),** in effect at the time of the claimant's 1984 injury, defines permanent total disability as follows:

> "Permanent total disability" means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence.

causation is an essential element to an entitlement to benefits and the claimant has the burden of proving a causal connection by a preponderance of the evidence. Brown v. Ament (1988), 231 Mont. 158, 163, 752 P.2d 171, 174. After reviewing the entire record in this case, we hold that there is substantial credible evidence to support the Workers' Compensation Court's finding that the claimant failed to establish a causal connection between his current physical condition and his 1984 right elbow injury. Virtually all of the medical testimony in this case reflects that, while it was possible that prolonged work activity combined with strenuous avocational body building activity caused the claimant's current degenerative condition, a causal connection between the claimant's current physical problems and his 1984 right elbow injury is not present. Because no causal connection between the claimant's current physical condition and his 1984 right elbow injury was shown, the Workers' Compensation Court correctly concluded that the claimant is not permanently totally disabled.

In the proceedings before the Workers' Compensation Court, the claimant requested payment of the expenses from his 1989 hospitalization for depression and for continuing psychotherapy. The responsibility of the insurer to provide medical benefits for treatment which is the result of an injury is set forth in § 39-71-704, MCA (1983), in pertinent part as follows:

**Payment of medical, hospital, and related services.** (1) In addition to the compensation provided by this chapter and as an additional benefit separate and apart from compensation, the following shall be furnished:

(a) After the happening of the injury, the employer or insurer shall furnish, without limitation as to length

11

of time or dollar amount, reasonable services by a physician or surgeon, reasonable hospital services and medicines when needed, and such other treatment as may be approved by the division for the injuries sustained.

Both Dr. Herbert Gray and Dr. William Stratford, psychiatrists who examined the claimant, testified that due to serious abuse as a child, and perhaps other factors, the claimant had preexisting psychological problems before his 1984 right elbow injury. In addition, both agreed that the claimant's emotional problems may have been aggravated by his loss of physical prowess. However, there is no credible medical evidence in the record establishing a relationship between the claimant's loss of physical prowess and his 1984 right elbow injury. Absent a causal connection between his current psychological problems and the 1984 right elbow injury, the claimant is not entitled to payment for his 1989 hospitalization for depression or continuing psychotherapy treatment.

The claimant also argues that because the insurer assumed liability in this case and paid benefits to him for over five years, the insurer waived its right to deny his claim for benefits. We disagree. Section 39-71-608, MCA (1983), provides that:

An insurer may, after written notice to the claimant and the division, make payment of compensation benefits within 30 days of receipt of a claim for compensation without such payments being construed as an admission of liability or a waiver of any right of defense.

It is clear that under the particular facts of this case the insurer accepted liability for the 1984 right elbow injury and paid workers' compensation benefits to the claimant. However, under § 39-71-608, MCA (1983), the insurer, by making such payments, did

12

not waive its right to subsequently assert nonliability for the claimant's condition insofar as it was not causally related to the elbow injury.

In conclusion, we hold that the Workers' Compensation Court did not err in ruling that the claimant is not permanently totally disabled as a result of his August 22, 1984 right elbow injury and that his psychological problems are not compensably related to that injury.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13

November 5, 1991

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail prepaid to the following named:


Samuel J. Grenz
104 Colorado Ave.
Whitefish, MT  **59937**


Terry G. Spear
225 Petroleum Bldg.
2812 First Ave. No.
Billings, MT  59101

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
     Deputy