NO. 93-036

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LESLIE LEE LOVELL,

        Petitioner and Appellant,

  -vs-

STATE COMPENSATION MUTUAL
INSURANCE FUND,

        Defendant, Insurer
          and Respondent.

FILED
SEP 2 1993
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Montana Workers' Compensation Court,
              The Honorable Timothy Reardon, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Terry Spear; Matovich, Addy & Keller, Billings
            Montana

        For Respondent:

            Laurence A. Hubbard; State Compensation Mutual
            Insurance Fund, Helena, Montana


                   Submitted on Briefs:  August 12, 1993

                             Decided:  September 2, 1993

Filed:

                           Clerk

Justice **Karla M.** Gray delivered the Opinion of the Court.

Leslie L. Lovell (Lovell) appeals from a judgment of the Workers' Compensation Court awarding him temporary total disability benefits of $8.26 per week. The State Compensation Mutual Insurance Fund (State Fund) cross-appeals the Workers' Compensation Court's imposition of a twenty percent penalty, attorney's fees and costs. We affirm in part, reverse in part and remand.

We phrase the issues on appeal as follows:

1) Did the Workers' Compensation Court err in refusing to consider Lovell's earnings from other sources when determining his weekly wage rate for temporary total disability benefits?

2) Did the Workers' Compensation Court err in imposing a twenty percent penalty against the State Fund for unreasonably delaying benefits to Lovell?

3) Did the Workers' Compensation Court err in imposing attorney's fees and costs against the State Fund?

In 1988, Lovell, a twenty-eight-year-old alcoholic, worked as a painter and roofer and provided lawnmowing services in Forsyth, Montana. On or around August 9, 1988, he stopped in at the Oak Room Bar (Oak Room) in Forsyth for a drink after work. Bob Thompson (Thompson), an owner of the Oak Room, asked Lovell to help him unload a roll carpet and some tiles from a truck. Although there was no discussion of wages, the parties have stipulated that Thompson employed Lovell for a two-hour job. The carpet fell on

Lovell and he suffered a serious knee injury. The State Fund has stipulated that Lovell is temporarily totally disabled.

Lovell subsequently signed a tax-withholding statement for the Oak Room and filled out a claim for workers' compensation benefits. Lovell testified that he did not want to sign either document, but Thompson told him that the only available insurance was through workers' compensation and Lovell would not get his medical bills paid otherwise. At the time of Lovell's injury, the Oak Room was enrolled under Plan Three of the Workers' Compensation Act, with the State Fund as its insurer.

On October 27, 1988 the State Fund accepted Liability for Lovell's injury and began weekly disability benefits, retroactive to August 16, 1.988, of $6.33 per week, based on Thompson's assertion that he intended to pay Lovell $4.75 per hour for a two-hour job. On March 1, 1989, his disability benefit rate increased to $8.26 per week after Lovell sent the State Fund his W2 tax-withholding form from the Oak Room indicating he received $6.20 per hour. During this time, Lovell attempted to provide the State Fund with earnings information concerning his painting and lawnmowing jobs; the State Fund maintained that his other wages were irrelevant.

On August 13, 1991, the State Fund reduced Lovell's disability benefits to zero after receiving a computer printout indicating that Lovell was receiving Social Security benefits. Although Lovell received Social Security benefits due to his alcoholism, the claims examiner from the State Fund assumed the benefits were for

his knee injury, and applied the Social Security offset pursuant to § 39-71-701(4), MCA (1987).

Lovell submitted travel expense vouchers to the State Fund for the trips he made to obtain medical treatment and physical therapy for his injured knee. In July, September, October and December of 1991, the State Fund reduced the mileage Lovell claimed by fifty miles each month because of a "technical error" on the part of the claims examiner and, as a result, did not reimburse him for that mileage.

Due to the ongoing dispute over the amount of benefits due, Lovell filed a petition with the Workers' Compensation Court on April 23, 1992. The State Fund apparently reimbursed Lovell for the withheld travel mileage sometime in September, 1992.

The Workers' Compensation Court heard the case on September 21, 1992, with the parties stipulating that Lovell was employed by the Oak Room, that he had suffered an industrial injury, and that he was temporarily totally disabled. The Workers' Compensation Court concluded that the State Fund had correctly computed Lovell's weekly wage rate for purposes of temporary total disability benefits. The court also imposed the statutory twenty percent penalty against the State Fund for unreasonably terminating Lovell's benefits due to the Social Security offset in August of 1991 and for improperly denying mileage from his travel claims. On that basis, the Workers' Compensation Court also awarded Lovell attorney's fees and costs. This appeal followed.

Did the Workers' Compensation Court err in refusing to consider Lovell's earnings from other sources when determining his

4

weekly wage rate for temporary total disability benefits?

Our review of decisions of the Workers' Compensation Court is two-fold. We will not overturn its findings of fact if there is substantial credible evidence in the record to support them. Grenz v. Fire and Cas. of Connecticut (1991), 250 Mont. 373, 378, 820 P.2d 742, 745. The Workers' Compensation Court's conclusions of law will be upheld if the court's interpretation of the law is correct. Grenz, 820 P.2d at 745. The first issue in this case turns on a question of law.

In computing Lovell's temporary total disability benefits, the Workers' Compensation Court determined that $12.40 was 'Lovell's correct weekly wage with the Oak Room. The court applied the definition of wages found in § 39-71-123, MCA (1987), the statute in effect at the time of Lovell's injury. Although Lovell argued that he should be allowed to aggregate his wages from other employments, the court concluded that because § 39-71-123(3)(a), MCA (1987), specifically referred to the claimant's employment with the "same employer," the statute precluded consideration of other wages. Relying solely on that phrase, the Workers' Compensation Court concluded that subsection (3)(a) "seemingly precludes aggregation of wages from other sources when determining an employee's wages." We conclude that this interpretation was in error.

Prior to 1987, wages were defined as "the average gross earnings received by the employee at the time of injury for the usual hours of employment in a week. . . ." Section 39-71-116(20),

5

MCA (1985). Under this definition of wages, we allowed aggregation of earnings from separate, concurrent employments in the determination of disability benefits. See Cattyson v. Falls Mobile Home Center (1979), 183 Mont. 284, 599 P.2d 341; Gee v. Cartwheel Restaurant (1982), 197 Mont. 335, 642 P.2d 1070; Harmon v. Harmon (1986), 220 Mont. 445, 716 P.2d 605; Milender v. Carpenter (1987), 230 Mont. 1, 748 P.2d 932. This Court consistently held that:

> The general rule is that earnings from concurrent employments may be combined if the employments are sufficiently similar so that a disabling injury at one employment would necessarily disable the employee in respect to the other employment.

Milender, 748 P.2d at 933, quoting Harmon, 716 P.2d at 607. Thus, prior to 1987, it was well-established that if an injury disabled the employee from concurrent employments, aggregation of the wages from the concurrent employments was allowed for purposes of determining disability benefits. We focus our interpretation, therefore, on whether the 1987 legislature effectively modified this existing case law in enacting the new definition of wages found in § 39-71-123, MCA (1987).

The rules of statutory construction require the language of a statute to be construed according to its plain meaning. If the language is clear and unambiguous, no further interpretation is required. GBN, Inc. v. Montana Dep't of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597. This Court resorts to legislative history only if legislative intent cannot be determined from the plain wording of the statute. State ex rel. Roberts v. Public Service Comm'n (1990), 242 Mont. 242, 246, 790 P.2d 489, 492.

Section 39-71-123, MCA (1987), reads:

Wages defined. (1) "Wages" means the gross remuneration paid in money, or in a substitute for money, for services rendered by an employee. Wages include but are not limited to:
(a) commissions, bonuses, and remuneration at the regular hourly rate for overtime work, holidays, vacations, and sickness periods:
(b) board, lodging, rent, or housing if it constitutes a part of the employee's remuneration and is based on its actual value; and
(c) payments made to an employee on any basis other than time worked, including but not limited to piecework, an incentive plan, or profit sharing arrangement.
(2) Wages do not include:
(a) employee travel expense reimbursements or allowances for meals, lodging, travel, and subsistence;
(b) special rewards for individual invention or discovery;
(c) tips and other gratuities received by the employee in excess of those documented to the employer for tax purposes:
(d) contributions made by the employer to a group insurance or pension plan: or
(e) vacation or sick leave benefits accrued but not paid.
(3) For compensation benefit purposes, the average actual earnings for the four pay periods immediately preceding the injury are the employee's wages, except if:
(a) the term of employment for the same employer is less than four pay periods, in which case the employee's wages are the hourly rate times the number of hours in a week for which the employee was hired to work; or
(b) for good cause show by the claimant, the use of the four pay periods does not accurately reflect the claimant's employment history with the employer, in which case the insurer may use additional pay periods.

Although this statute clearly is more specific than the pre-1987 definition, the essence of that earlier definition of wages did not materially change with the 1987 amendment. Prior to 1987, wages were "the average gross earnings received by the employee . . . ," while the 1987 provision defines wages as "the gross remuneration paid in money . . . for services rendered by an employee." Section 39-71-116(20), MCA (1985): § 39-71-123(1), MCA (1987). The

7

remainder of § 39-71-123(1), MCA (1987), further refines what is included in "wages;" subsection (2) sets forth types of remuneration which do not constitute "wages." Subsection (3) provides the means by which the amount of wages is computed for purposes of workers' compensation benefits. Nothing in the plain language of the 1987 amendments creates a material change in the definition of wages which could be construed as a departure from existing law regarding aggregation of wages. When taken in the context of the entire definition, we cannot agree with the Workers' Compensation Court's conclusion that the phrase "same employer" contained in subsection (3)(a) demonstrates such a change.

Even if subsection (3) is interpreted in isolation, the plain language neither directly addresses the aggregation of wages from other employments nor directly precludes aggregation. Under the general rule of § 39-71-123(3), MCA (1987), wages are computed for compensation benefit purposes by using the average actual earnings for the four pay periods immediately preceding the injury. If wages cannot be computed under the general rule because the employee has not yet worked four pay periods with the employer, or if the use of the preceding four pay periods does not accurately reflect the employee's work history, subsections (a) and (b) provide alternative methods for computing wages. Nothing in the plain language of § 39-71-123(3), MCA (1987), suggests that the legislature intended to abolish aggregation of wages from concurrent employments.

Furthermore, this Court should not interpret a Statute So as

8

to defeat its purpose; rather, interpretation should achieve the social purpose for which the statute was enacted. **Maney** v. State **(1992),** 255 Mont. 270, 274, 842 **P.2d** 704, 706. An important purpose of the 1987 **Workers'** Compensation Act was to provide a wage-loss benefit that bears a reasonable relationship to the actual wages lost as a result of the work-related injury. Section **39-71-105(1),** MCA (1987). The aggregation principle in effect via case law at the time of the 1987 amendments comports with the stated purpose. As we stated in **Gee,** the amount of compensation must bear some reasonable relation to the loss sustained on account of disability. Gee, 642 **P.2d** at 1071. The Workers' Compensation Court's interpretation of § 39-71-123, MCA **(1987),** defeats this statutorily stated purpose of the 1987 amendments to the Workers' Compensation Act.

In sum, we cannot conclude that the reference to the **"same** employer" in § 39-71-123(3)(a), MCA **(1987),** demonstrates the legislature's intentional revocation of the well-established principle allowing aggregation of wages from concurrent employments. Nothing in the plain language of § 39-71-123, MCA **(1987),** suggests that the legislature intended to affect, in any manner, prior case law allowing aggregation of wages from concurrent employments. We concludethatthe Workers' Compensation Court erred as a matter of law in interpreting § 39-71-123(3)(a), MCA **(1987),** to preclude aggregation of wages from concurrent employments.

Because of its conclusion on the aggregation issue, the

9

Workers' Compensation Court did not determine whether Lovell was an "employee" under the Workers' Compensation Act with regard to other work he may have been performing or whether other income constituted wages from concurrent employment. Those issues remain to be determined by the Workers' Compensation Court on remand.

Did the Workers' Compensation Court err in imposing a twenty percent penalty against the State Fund for unreasonably delaying benefits to Lovell?

On August 13, 1991, after receiving a computer printout that indicated that Lovell was receiving Social Security benefits, the State Fund applied a statutory offset and reduced Lovell's disability benefits to zero. In addition, the State Fund erroneously reduced Lovell's mileage claims for trips he made to obtain medical treatment for his injured knee by fifty miles each month for July, September, October and December of 1991.

The Workers' Compensation Court found that the State Fund's decision to terminate Lovell's disability benefits was unreasonable because the claims examiner had not investigated, in even a cursory fashion, the basis upon which Lovell received Social Security benefits. Investigation would have established that Lovell received Social Security benefits due to his alcoholism. The court also found that the State Fund's admitted clerical error in denying reimbursement for a portion of Lovell's claimed medical travel mileage was unreasonable. The Workers' Compensation Court, therefore, assessed a twenty percent penalty, pursuant to § 39-71-2907, MCA (1987), on the amount of reimbursement due for the withheld mileage and the erroneous Social Security offset.

10

The State Fund argues that the Workers' Compensation Court's conclusion of unreasonableness was not supported by substantial credible evidence. Specifically with regard to the erroneous Social Security offset issue, it contends that it was reasonable for the claims examiner to assume that Lovell's Social Security benefits were for his work-related industrial injury. The State Fund also contends that, after receiving notice of its intention to apply the Social Security offset, Lovell had a duty to inform the State Fund of the reason he received Social Security benefits.

Whether an insurer's conduct was unreasonable is a question of fact: a finding of unreasonableness will not be overturned on appeal if supported by substantial evidence. Coles v. Seven Eleven Stores (1985), 217 Mont. 343, 349, 704 P.2d 1048, 1052; Milender, 748 P.2d at 935. The claims examiner testified that she assumed Lovell's Social Security benefits were for his knee injury and did not investigate the matter before terminating his benefits. The claims examiner also testified that a clerical error resulted in her denial of medical travel reimbursement for fifty miles each month for four months. We conclude that the claims examiner's testimony provided substantial evidence in support of the Workers' Compensation Court's finding of unreasonableness.

Furthermore, we have held that an insurer has a duty to make at least a minimal investigation of a claim's validity in light of the relevant statutes. Absent such an investigation, denial of a claim for benefits is unreasonable. Gaumer v. Montana Dep't of Highways (1990), 243 Mont. 414, 421, 795 P.2d 77, 81. The Gaumer

11

rationale is applicable here.

Section 39-71-701(4), MCA (1987) (emphasis added), provided:

> (4) In cases where it is determined that periodic disability benefits granted by the Social Security Act are payable because of the injury, the weekly benefits payable under this section [compensation for temporary total disability] are reduced, but not below zero, by an amount equal, as nearly as practical, to one-half the federal periodic benefits for such week . . . .

The statute allows the State Fund to apply the Social Security offset only when Social Security benefits are payable because of the claimant's work-related injury. In light of § 39-71-701(4), MCA (1987), the State Fund had a duty to investigate the circumstances surrounding Lovell's receipt of Social Security benefits prior to reducing his workers' compensation benefits. This duty to investigate is independent of, and unrelated to, any action by a claimant. In this case, the State Fund's failure to fulfill its duty to investigate provides a sufficient basis for the Workers' Compensation Court's conclusion that the State Fund's behavior was unreasonable.

The State Fund also claims that its behavior cannot be considered unreasonable because it has paid Lovell for the unreimbursed mileage and apparently has agreed to remove the Social Security offset. We disagree. Payment of unreasonably withheld benefits "on the courthouse steps" does not negate the insurer's potential liability for a penalty for unreasonable delay of benefits. To conclude otherwise would render the "unreasonable delay" provisions of the penalty statute moot. See Handlos v. Cyprus Indust. Minerals (1990), 243 Mont. 314, 316-17, 794 P.2d

12

702, 703.

The State Fund additionally argues that the Workers' Compensation Court had no jurisdiction to award a penalty because the parties had not complied with the dispute resolution and mediation requirements of § 39-71-2401, MCA (1987). This argument is inconsistent with the State Fund's position before the Workers' Compensation Court. The Pretrial Order, signed by the State Fund, includes uncontested fact No. 8, which reads, "[p]ursuant to § 39-71-2401, et sea., MCA, dispute resolution requirements were satisfied regarding this dispute." The State Fund also included this statement as an uncontested fact in its proposed findings of fact and conclusions of law.

Similarly, the State Fund argues that the Workers' Compensation Court lacked jurisdiction to award a penalty based on the Social Security offset because Lovell had not included that precise issue in his petition. Lovell's petition requested a penalty pursuant to § 39-71-2907, MCA (1987), alleging that the State Fund had acted unreasonably. Issue No. 2 in the Pretrial Order reads:

> Whether the Defendant has unreasonably delayed or denied payment of Petitioner's benefits, thereby incurring an [sic] twenty percent [sic] pursuant to § 39-71-2907 MCA.

We conclude that the penalty issue was properly before the Workers' Compensation Court.

Because the Workers' Compensation Court's finding of unreasonableness is based on substantial credible evidence, we hold that the court did not err in imposing a twenty percent penalty on

13

the State Fund pursuant to § 39-71-2907, MCA (1987).

Did the Workers' Compensation Court err in imposing attorney's fees and costs against the State Fund?

The Workers" Compensation Court concluded that Lovell was entitled to an award of attorney's fees and costs for the State Fund's actions regarding the Social Security offset and travel reimbursement. An award of attorney's fees is governed by § 39-71-611, MCA (1987), which provides:

> (1) The insurer shall pay reasonable costs and attorney fees as established by the workers' compensation court if:
> (a) the insurer denies liability for a claim for compensation or terminates compensation benefits;
> (b) the claim is later adjudged compensable by the workers' compensation court: and
> (c) in the case of attorneys' fees, the workers' compensation court determines that the insurer's actions in denying liability or terminating benefits were unreasonable.
> . . .

The Workers' Compensation Court did not analyze the question of attorney's fees under § 39-71-611(1)(b), MCA, and applicable case law. See Yearout v. Rainbow Painting (1986), 222 Mont. 65, 719 P.2d 1258; Milender, 748 P.2d at 935.

The record before us is unclear as to whether the State Fund has reimbursed Lovell for the erroneous Social Security offset or, if the parties had settled the matter, when the settlement was reached. Because we are remanding this case for further proceedings as a result of our holding on the aggregation issue, we direct the Workers' Compensation Court to readdress the issue of attorney's fees relating to the Social Security offset and mileage reimbursement issues.

14

Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
_____
_____
Justices

15

Justice James C. Nelson specially concurs:

While I concur in the Court's opinion, I do so in utter dismay of the fact that this case is even before us.  The claimant, here, was never eligible for worker's compensation benefits in the first place.  Mr. Lovell stopped by the Oak Room Bar to have a beer and was asked by one of the owners to help unload some carpet and tiles from a truck.  Mr. Lovell was not the bar's employee; there was never any discussion of wages; the claimant was never even paid for the work he did at the bar on the date of his injury.

While helping to unload the truck, the claimant seriously injured his knee when a carpet roll fell on him.  To his credit, at least, Mr. Lovell did not want to make a worker's compensation claim.  Why should he?  He was not the bar's employee: he was not entitled to benefits.  But, since the owners of the bar apparently did not carry public liability insurance, they convinced Mr. Lovell that the only way he was going to get his medical expenses paid was to make a claim against their worker's compensation coverage.

The claim was a hoax.  The State Fund was simply being used -- abused, actually --- so the bar owners would not have to pay for Mr. Lovell's injuries out of their own pockets because they failed to have the foresight and good business sense to carry public liability insurance.

This travesty was then compounded when the State Fund accepted liability and began paying benefits of less than $10.00 a week on the dummied-up claim.  Mr. Lovell, again, to his credit, attempted to undo the claim by numerous phone calls to the State Fund

16

explaining the circumstances of his injury and by filing suit against the bar for his damages in a separate civil action.

The State Fund would have none of that, however, and continued to accept liability for the claimant's injury and to pay benefits, with the result that Mr. Lovell's civil case against the bar was dismissed because of the exclusivity provision of the Worker's Compensation Act. That provision prohibits an employee from suing his "employer" for injuries arising out of an "industrial accident". Unfortunately, however, this comedy of errors did not end there.

His only other civil remedy having been precluded and having been determined by the State Fund to be "entitled" to benefits, the next logical progression in the chain of events was a dispute over the amount of the benefits being paid. Mr. Lovell claimed that he was entitled to combine wages from other odd jobs he had performed with the "wages" from his "employment" at the bar in order to establish the wage base on which his benefits were determined. At least prior to 1987 and after 1989 that was permissible under the law. The State Fund disagreed with that approach, however, on the basis of the 1987 statute applicable to Mr. Lovell's claim. The Fund claimed that Mr. Lovell's only "employment" was at the bar and that his other wages were irrelevant.

That disagreement, naturally, necessitated a mediation hearing and, ultimately, a full-blown trial (with all the attendant discovery that goes with a trial) before the Worker's Compensation Court.

To be fair, there likely would not have been a disagreement over the proper interpretation of the statute, but for the fact that every session the Legislature seemingly feels obliged to rewrite all or substantial portions of the worker's compensation laws in its biennial attempt to stave off what appears to be the imminent collapse of the entire system. Rewriting an existing law or enacting a new law is, at best, risky business, because it often takes several years and a lawsuit or two for some court to interpret the law. Here, we are interpreting a law, long since changed, that was enacted six years ago. In any event, for reasons probably no one will ever know, in 1987, the Legislature changed one portion of the statute at issue. (True to form, in 1989, the law was changed again).

Unfortunately, when the Legislature amended the law in 1987, the language used was not as precise as it might have been. Hence, the disagreement between the claimant and his attorneys and the State Fund and its attorneys over what the statute really said and meant.

The Worker's Compensation Judge took his best shot at trying to interpret the statute. In the process, he also determined that the State Fund had underpaid Mr. Lovell by wrongfully reducing his mileage claims and offsetting his social security benefits against his worker's compensation benefit payments. That resulted in the State Fund having to repay the under-payments along with a 20% penalty and, possibly, Mr. Lovell's attorney's fees.

Now, the whole case is before the Supreme Court. This Court

18

has spent considerable time applying appropriate legal interpretations to the facts and law at issue in a case that only got here by its own bootstraps. Having accomplished our task, we are now sending the case back to the Worker's Compensation Court for still further proceedings. I assume that whatever decision is made on those issues will generate yet another appeal.

I suspect that the average person could put their child through college on what this case has already cost the State in attorneys' fees, penalties, expenses, medical costs, travel costs, benefits and the wasted time and salaries of bureaucrats, investigators, claims examiners, hearings examiners and judges. To make matters worse, the final chapter in this case has yet to be written.

The tragedy of this -- compounded in one form or another in other cases -- is that employers, taxpayers and, now, employees, alike, are paying their hard-earned premium, tax and wage dollars for this nonsense. It is small wonder that the State Fund is in perpetual financial extremis, if this case is anything but an anomaly -- which I can only hope is true.

I concur in the Court's opinion because, on the narrow legal issues presented, the opinion is a correct interpretation of the law -- long since changed -- and because we are without authority to do anything but resolve the legal issue presented. It is, appalling, nonetheless, that this case ever got this far.

_____
Justice

19

Chief Justice J.A. Turnage and Justice Terry N. Trieweiler concur in the foregoing special concurrence.

_____
Chief Justice

_____
Justice

September 2, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Terry Spear
Matovich, Addy & Keller
225 Petroleum Bldg., 2812 Fist Ave. No.
Billings, MT 59101

Laurence A. Hubbard, Legal Counsel
State Compensation Mutual Ins. Fund
P.O. Box 4759
Helena, MT 59604-4759


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M Tudor_____
    Deputy