No. 95-532

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOHN SMART,

    Appellant,

v.

THE MONTANA HISTORICAL SOCIETY,

    Employer,

and STATE COMPENSATION
MUTUAL INSURANCE FUND,

    Respondent

FILED

JUN 21 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court
                State of Montana
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Linda M. Deola, Reynolds, Motl & Sherwood, Helena,
            Montana

        For Respondent:

            Daniel J. Whyte, State Compensation Insurance Fund,
            Helena, Montana

Submitted on Briefs:  February 8, 1996

Decided:  June 21, 1996

Filed:

_____
          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

John Smart (Smart) appeals a decision of the Workers' Compensation Court finding that Smart is not entitled to permanent total disability benefits under § 39-72-701(1), MCA (1991), and limiting his benefits to a maximum award of $10,000 pursuant to § 39-72-405, MCA (1991). We affirm.

The sole issue presented for review is:

Did the Workers' Compensation Court err in finding that Smart is not entitled to permanent total disability benefits under the Montana Occupational Disease Act?

### Factual and Procedural Background

Smart filed a claim on October 29, 1992, for an injury arising out of and in the course of his employment with the Montana Historical Society. Smart had been employed by the Montana Historical Society as an archival photographer for 11 years. As a result of overexposure to toxic chemicals used in the photography process, Smart experienced nausea, headaches, chronic respiratory irritation, disorientation, memory loss, and depression. At the time of his injury, Smart was earning $16 per hour, plus benefits.

Smart's claim was accepted pursuant to the Montana Occupational Disease Act (MODA), set forth at Title 39, Chapter 72, Montana Code Annotated. The examining physician determined that Smart suffered from an occupational disease, but that the effects were not permanent so long as Smart did not continue his work in the darkroom.

The **State Compensation Insurance Fund (the State Fund) paid** Smart temporary total disability benefits. When Smart reached maximum medical improvement, the State Fund offered him $10,000, the maximum amount of benefits allowed under § 39-72-405, MCA (1991). Smart rejected the offer claiming that he is permanently totally disabled and is therefore entitled to benefits in excess of $10,000.

The State Fund, through Independent Rehabilitation Providers of Montana, performed an employability assessment on Smart to determine whether other employment was available according to his education and experience. The assessment determined that there were a number of positions available to Smart, all of which paid considerably less than the $16 per hour he had been making previously.

On July 22, 1994, Smart filed a Motion for Summary Judgment with the Workers' Compensation Court claiming that the $10,000 limit in the MODA does not apply in his situation as he is permanently totally disabled. The court denied Smart's motion and certified the matter as final for purposes of appeal to the Montana Supreme Court. Smart filed an appeal with this Court on October 25, 1994. We dismissed the appeal, without prejudice, on April 20, 1995, holding that the appeal was premature as the Workers' Compensation Court failed to decide the necessary substantive issues of claimant's benefits.

On May 1, 1995, Smart and the State Fund filed a joint Motion for Reconsideration before this Court. We denied this motion on

3

May 9, 1995. On October 31, 1995, the workers' Compensation Court issued a Decision and Final Judgment wherein the court ruled that Smart was not entitled to permanent total disability benefits under § 39-72-701(1), MCA (1991), and was limited to a maximum award of $10,000 pursuant to § 39-72-405, MCA (1991). Smart now appeals the Decision and Final Judgment of the Workers' Compensation Court.

## Discussion

Did the Workers' Compensation Court err in finding that Smart is not entitled to permanent total disability benefits under the Montana Occupational Disease Act?

The Workers' Compensation Court determined that, even though Smart cannot return to his former work, he is physically able to perform other available work for which he is qualified, thus he is not permanently totally disabled and not entitled to benefits under § 39-72-701(1), MCA (1991). The court found that compensation for Smart's injury is limited under the MODA, specifically by § 39-72-405, MCA (1991), to an award of up to $10,000.

We employ two standards of review for Workers' Compensation Court decisions: we review the court's findings of fact to determine if they are supported by substantial credible evidence, and we review the court's conclusions of law to determine if they are correct. Turjan v. Valley View Estates (1995), 272 Mont. 386, 390, 901 P.2d 76, 79 (citing Caekaert v. State Comp. Mut. Ins. Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498). There are no contested facts in the case before us, only questions of statutory interpretation.

Smart argues that the Workers' Compensation Court erred in its interpretation of the MODA as it pertains to his injury. He maintains that § 39-72-405, MCA (1991), refers to a nondisabling occupational disease and that only when an individual has such a nondisabling occupational disease may compensation be limited to $10,000. Section 39-72-405, MCA (1991), provides, in part:

> (2) When any employee in employment on or after January 1, 1959, because he has an occupational disease incurred in and caused by such employment which is not yet disabling, is discharged or transferred from the employment in which he is engaged or when he ceases his employment and it is in fact, as determined by the medical panel, inadvisable for him on account of a nondisabling occupational disease to continue in employment and he suffers wage loss by reason of the discharge, transfer, or cessation, the department may allow compensation on account thereof as it considers just, not exceeding $10,000.

Smart contends that this does not apply to him as his injury fits the definition of "disabling" found at § 39-72-102, MCA (1991), which provides, in part:

> (4) "Disablement" means the event of becoming physically incapacitated by reason of an occupational disease from performing work in the worker's job pool.

Smart argues that his "job pool" is photography and since he cannot return to work in that field, he is disabled under this definition. Smart does not claim that he is physically unable to perform other types of work. He agrees with the State Fund and the Workers' Compensation Court that he is only unable to perform photography work.

The State Fund, on the other hand, argues that the terms "not yet disabling" and "nondisabling" in § 39-72-405, MCA (1991), mean that a person can have an occupational disease that prevents them

5

from returning to their time of injury employment but does not prevent them from returning to other employment. As the State Fund points out, the "not yet disabling" language in § 39-72-405, MCA, (1991), also takes into consideration the likelihood that an injured worker may become totally disabled at some time in the future, allowing for a change in status to permit payment of permanent total disability benefits.

The State Fund contends, and we agree, that, only when a person is unable to physically perform any employment are they entitled to either temporary total disability benefits or permanent total disability benefits under the MODA. Smart does not fit within the definition of permanent total disability found in § 39-71-116(16), MCA, and made applicable to the MODA by § 39-72-701, MCA, because Smart is physically able to perform other types of employment. Section 39-71-116(16), MCA, provides in part:

> (16) "Permanent total disability" means a condition resulting from injury as defined in this chapter, after a worker reaches maximum healing, in which a worker has no reasonable prospect of physically performing regular employment. Regular employment means work on a recurring basis performed for remuneration in a trade, business, profession, or other occupation in this state.

Contrary to Smart's contention that his "job pool" includes only jobs in the field of photography, the State Fund argues that Smart's "job pool" includes all jobs that he is physically capable of performing and that he is qualified for based on his age, education and experience. The phrase "worker's job pool" is not defined within the MODA, nor is it defined within the Workers' Compensation Act. In attempting to determine the meaning of this

6

phrase, the Workers' Compensation Court, in its order denying Smart's Motion for Summary Judgment, looked to the plain meaning of the statute, but found that, on its face, the term has no plain, commonly understood meaning. The court found that the phrase is ambiguous and resorted to looking at the legislative history of the statute to determine the legislature's intent.

The only definition of "worker's job pool" that the Workers' Compensation Court was able to find was in a portion of the Workers' Compensation Act that was repealed by the Montana Legislature in 1991. This statute provided, in part:

> (a) "Worker's job pool" means those jobs typically available for which a worker is qualified, consistent with the worker's age, education, vocational experience and aptitude and compatible with the worker's physical capacities and limitations as the result of the worker's injury. Lack of immediate job openings is not a factor to be considered.
> (b) A worker's job pool may be either local or statewide, as follows:
> (i) a local job is one either in a central city that has within its economically integrated geographical area a population of less than 50,000 or in a city with a population of more than 50,000 as determined by the division; or
> (ii) a statewide job is one anywhere in the state of Montana.

Section 39-71-1011(7), MCA (1987) (Repealed).

In its denial of Smart's Motion for Summary Judgment, the Workers' Compensation Court adopted this definition of "worker's job pool." Smart contends that the court erred in applying this definition as the definition had been repealed in 1991. He argues that the MODA should be applied in a manner most favorable to the injured worker. In support of this proposition, Smart relies on §

7

39-72-104, MCA (1985) (Repealed) (requiring liberal construction in the interpretation of any part of this chapter).

Ordinarily, legislative intent can be gleaned from the plain meaning of the statute. Holly Sugar v. Department of Revenue (1992), 252 Mont. 407, 412, 830 P.2d 76, 79.

> If the language is clear and unambiguous, no further interpretation is required, and we will resort to legislative history only if legislative intent cannot be determined from the plain wording of the statute.

Clarke v. Massey (1995), 271 Mont. 412, 416, 897 P.2d 1085, 1088 (citing Lovell v. State Comp. Mut. Ins. Fund (1993), 260 Mont. 273, 285, 860 P.2d 95, 99).

The term "worker's job pool" was inserted into both the Workers Compensation Act and the MODA during the 1987 Montana legislative session. In addition, the 1987 Legislature added the definition of "worker's job pool" to the Workers' Compensation Act. We agree with the State Fund and the Workers' Compensation Court that the legislature intended that the same definition apply to both acts since the legislature did not construct a different definition of "worker's job pool" for the MODA.

In 1991, the Montana Legislature adopted new standards for rehabilitation in the Workers' Compensation Act, repealing the standards set forth in 1989. Along with the elimination of the term "worker's job pool" in the Workers' Compensation Act, the 1991 Legislature repealed the definition of that term found in the Workers' Compensation Act, but did not eliminate the term from the MODA. Repeal of the definition of "worker's job pool" from the Workers' Compensation Act does not mean that any other definition

8

was ever intended for this term by the legislature.  It is reasonable, as the State Fund and the Workers' Compensation Court surmised, that the definition would remain the same.

Since the legislature's intention in using the phrase "worker's job pool" cannot be determined from the plain meaning of that phrase, we find no error in the Workers' Compensation Court resorting to legislative history and adopting the definition of this phrase set out at § 39-71-1011(7), MCA (1987) (Repealed). In addition, we do not find persuasive Smart's contention that the MODA should be applied in a manner most favorable to the injured worker as the statute Smart cites for this proposition was repealed by the 1987 Montana Legislature at the same time the phrase "worker's job pool" was inserted into the MODA and the Workers' Compensation Act.

Accordingly, we hold that the Workers' Compensation Court was correct in concluding that Smart is not entitled to permanent total disability benefits under the MODA since he is physically able to perform other types of employment.

Affirmed.

We Concur:

_____
Justice

_____

_____

_____

_____
Justices

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Linda M. Deola, Esq.
Reynolds, Motl & Sherwood
401 No.' Last Chance Gulch
Helena, MT 59601

Daniel J. Whyte
State Compensation Ins. Fund
P.O. Box 4759
Helena, MT 59604-4759

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy